OPINION OF THE COURT
Irving Lang, J.
The central issue in this CPLR article 78 proceeding is whether the Department of Environmental Protection (DEP) of the City of New York is entitled to State reimbursement for certain costs incurred by other agencies. These costs were incurred by 13 “central support agencies” which, under the city’s “Cost Allocation Plan” (CAP) distributes overhead costs to other city agencies including DEP. Relying on a decision which allowed allocation of “fringe benefits”, the city claims that its CAP costs are analogous, and that the action of the State in rejecting reimbursement is contrary to law.
*736 I. FACTS
In November, 1981, petitioner city Department of Environmental Protection (City DEP) sought reimbursement from the State Department of Environmental Conservation (State DEC) for Cost Allocation Plan costs (CAP costs) allocated by the city to the Bureau of Air Resources during the fiscal years 1975 to 1979. The total CAP cost allocation was approximately $1.6 million. In August, 1983, the State disallowed reimbursement of the CAP costs. The disallowance was partially based upon a bulletin (No. F-123) issued by the State Comptroller’s office, which stated that although the Federal Government reimburses localities for the overhead costs of administering Federally funded programs, there is no similar State obligation in connection with State-funded programs. Based upon a reimbursement rate of 50%, petitioner claims that it has been denied reimbursement of approximately $800,000 due to this dis-allowance.
In the instant motion, petitioner seeks an order pursuant to CPLR article 78, annulling the State’s determination denying the CAP reimbursement. Petitioner makes two claims: the first is that the decision of the State Comptroller’s office recommending disallowance is “affected by an error of law, in that Comptroller’s Bulletin F-123 is an invalid rule or regulation as applied to the Environmental Conservation Law”. The second claim is that the CAP disallowance is “arbitrary and capricious, in that Comptroller’s Bulletin F-123 is an invalid rule or regulation as applied to the Environmental Conservation law.” I note that these claims are duplicitous. The city is alleging that the disallowance is legally incorrect and that it is arbitrary and capricious for the same reason. The only issue, therefore, is whether the State action is contrary to law.
II. COST ALLOCATION PLAN
In New York City, 13 agencies exist which serve other city agencies rather than the public. These “central support agencies” include: the Office of Management and Budget; Office of the Comptroller; the Finance Administration; the Law Department; the Department of Records and Information; New York City Employee’s Retirement *737 System; Teacher’s Retirement System; Department of Personnel; Office of Collective Bargaining; Office of Labor Management and Relations; Department of Investigation; Department of City Planning, and the Finance Information Service Agency.
Each of these central support agencies compiles a yearly report, detailing the activities which it performed on behalf of the other city agencies which serve the public. These central support agency reports specify the amount of time and personnel utilized for each project. They are sent to the Director of Grant Cost Management for the city’s Office of Management and Budget. The Office of Management and Budget, using the cost expenditure data-of the 13 central support agencies, prepares a CAP. The plan calculates the percentage of the support agencies’ costs which are to be allocated to the cost of operating each of the other agencies. Thus, the purpose of the CAP is to disperse the cost of operating the city’s central support agencies amongst the other city agencies which are served by those support agencies. The plan is utilized primarily in connection with Federal contracts and grants to New York City, and is examined and approved by the Federal Department of Health and Human Services.
Once the 13 central support agencies’ allowable CAP costs are allocated to the various public service agencies, these latter agencies distribute the CAP costs over their divisions and programs. The public service agency thus calculates the “CAP portion” of the indirect cost of each of its divisions and programs. In this manner, the city Department of Environmental Protection distributes its assigned CAP costs over its environmental programs. One such program which bears its proportionate share of CAP costs is the Bureau of Air Resources.
III. CONTENTIONS
Petitioner alleges that CAP costs are legitimate expenditures associated with the maintenance of New York City’s environmental conservation activities, and are eligible for State reimbursement pursuant to ECL 3-0117, and titles I, II and III of article 6 of the Public Health Law, as incorporated into the Environmental Conservation Law.
*738 The city bases its argument primarily on the Appellate Division decision in Matter of County of Erie v Flacke (80 AD2d 954). In Flacke, petitioner County of Erie commenced an article 78 proceeding challenging State DEC’S decision to deny reimbursement of fringe benefit costs associated with Erie County’s environmental conservation programs. The State based its denial on its own regulation, 6 NYCRR 635.5 (d), which excluded from reimbursement a county’s contributions for health insurance, retirement, and Social Security. The State argued that the regulation was valid pursuant to ECL 3-0117 (subd 1) and pursuant to a 1979 amendment to section 601 of the Public Health Law. That amendment specifically excludes costs for fringe benefits from reimbursement by the State.
The Appellate Division in the Fourth Department struck down the regulation and held that, as a matter of statutory construction, fringe benefit costs incurred through environmental conservation programs are reimbursable under ECL 3-0117 (subd 1). The court noted that ECL 3-0117 (subd 1) provides that environmental conservation activities are eligible for State aid pursuant to titles I, II and III of article 6 of the Public Health Law to the same extent that they were eligible for such aid immediately prior to the effective date of chapter 140 of the Laws of 1970 (L1970, ch 140, created the ECL as an independent statute). As it was then written, the plain language of subdivision 1 of section 601 of the Public Health Law required the State to reimburse municipalities for fringe benefits. Although the Legislature amended subdivision 1 of section 601 of the Public Health Law in 1979 so as to exclude fringe benefits from reimbursement, the Appellate Division held that the amendment did not apply to the Environmental Conservation Law. The court concluded that since the Public Health Law of 1970 provided for reimbursement of fringe benefits the Commissioner of Environmental Conservation had no authority to issue a regulation excluding fringe benefits from State reimbursement.
The city argues that the fringe benefits exclusion in Flacke is analogous to the CAP cost exclusion at issue here. Petitioner claims that the Public Health Law in effect in 1970 had been broadly interpreted so as to encompass payments for indirect costs, such as CAP costs.
*739 Respondent State, in opposition to the city’s petition, argues that it is not required to reimburse City DEP for CAP costs allocated to the Bureau of Air Resources, out of local assistance funds specifically designated by the Legislature for use in environmental conservation programs. It argues that CAP costs represent nothing more than a share of general overhead costs of operating the city’s central support agencies. Respondent claims that since these costs are not costs incurred by the city directly for air pollution control or environmental conservation activities, nothing in the ECL or the Public Health Law requires the State to reimburse such expenditures.
IV. ANALYSIS
Prior to June 30,1970, the State’s environmental conservation programs were implemented, and State aid was available, pursuant to the Public Health Law. On April 22, 1970, chapter 140 of the Laws of 1970 was enacted. Pursuant thereto, the Environmental Conservation Law became effective, and authority to administer environmental programs was transferred from the Commissioner and Department of Health to the Commissioner and Department of Environmental Conservation. In 1977, after various modifications, the ECL was enacted in its present form.
ECL 3-0117 governs activities of local government agencies. Subdivision 1 provides that “[activities of local health boards, departments and officers * * * pertaining to functions, powers and duties which were transferred pursuant to chapter 140 of the Laws of 1970, from the Department and Commissioner of Health to the Department and Commissioner of Environmental Conservation shall be eligible for aid under the provisions of titles 1,2, and 3 of article 6 of the Public Health Law to the same extent such activities were eligible for such aid if conducted immediately prior to the effective date of chapter 140 of the Laws of 1970” (Emphasis added.)
The relevant provisions of the Public Health Law incorporated by reference into ECL 3-0117 (subd 1) are sections 601 and 608 (subd 1, par [e]) of the Public Health Law. Section 601, the general State aid provision, states that the appropriations made “for the purposes of carrying out the provisions of this article shall be available * * * for the *740 payment of expenses of personal service and other maintenance and operation * * * necessary for the administration of this article”. Section 608 (subd 1, par [e]) of the Public Health Law provides that 50% of the money spent by a city during a fiscal year for air pollution control is reimbursable. Reimbursable expenses include “costs incurred for pensions, federal old age and survivors insurance and health insurance.” (Public Health Law, § 608, subd 1, par [e].) '
ECL 3-0117 (subd 3) requires the Commissioner of State DEC to establish rates of reimbursement for localities which expend money on environmental programs, not to exceed 50% of the amount expended annually by a city or county.
Finally, ECL 3-0117 (subd 4) directs State DEC to adopt rules and regulations establishing eligibility standards and minimum criteria for the composition of local agencies engaged in environmental conservation activities. In accord with this statutory mandate, State DEC has enacted regulations establishing conditions for the receipt of State aid. 6 NYCRR 635.4 (a) provides that: “To insure the most efficient use of available local assistance funds, State aid shall be approved only for those environmental conservation activities performed by either (1) a full-time local health department * * * or (2) a local environmental control agency created under local initiative” (emphasis added; see, also, 6 NYCRR 635.3 [a] [4]).
I find that petitioners’ contention that the Legislature contemplated State reimbursement of CAP costs allocated to the Bureau of Air Resources is contrary to both the intent and plan language of the controlling regulations and statutes.
Petitioner’s argument that Matter of County of Erie v Flacke (80 AD2d 954, supra) requires State reimbursement of CAP costs is without merit. The Flacke court simply decided that ECL 3-0117 (subd 1) requires the State to reimburse municipalities for fringe, benefit expenditures. However, there is a distinct difference between fringe benefits for persons who carry out environmental conservation programs and CAP costs, incurred by the city’s nonen *741 vironmental support agencies. The fringe benefits are directly related to the costs of implementing the environmental programs, whereas CAP costs, by their nature, are indirectly related to such programs. Petitioner argues that in the case at bar, just as in Flacke, the Public Health Law in effect in 1970 “had been interpreted to include payments for indirect costs, such as CAP costs.” Significantly, no support whatsoever is given for this conclusion.
A statute must be given a rational interpretation consistent with implementing legislative intent. Clearly, the Legislature did not intend the State aid provisions to be so broadly construed, so as to require reimbursement for all costs which could conceivably be indirectly related to environmental programs.
The State aid provisions are clearly defined and circumscribed. Section 608 (subd 1, par [e]) of the Public Health Law specifically provides for reimbursement for money expended by a city for air pollution control programs. In Matter of County of Erie v Axelrod (60 NY2d 731) the Court of Appeals interpreted that section to allow for reimbursement to a local health department or to an agency outside that department which carries out a specific program. This logically implies that agencies which do not carry out a specific health program are not eligible for reimbursement under that provision. By definition, the central support agencies from which the CAP costs are derived do not carry out a specific health program, nor do they implement specific air pollution control programs.
Similarly, ECL 3-0117 (subd 3) provides for reimbursement when a city expends moneys in undertaking environmental conservation activities. State DEC’s regulations precisely delineate the type of agency which is eligible for State aid (i.e., a full-time health department or a local environmental control agency) and the manner in which the aid is to be used (i.e., to reimburse the salaries and wages of persons directly involved in performing environmental conservation functions). (6 NYCRR 635.4, 635.3 [a] [4].) State reimbursement of the central support agencies’ CAP costs does not fall within these criteria.
Petitioner’s contention that State Comptroller’s bulletin No. F-123 is an invalid rule or regulation as applied to the *742 Environmental Conservation Law is similarly rejected. The Comptroller’s bulletin is merely an advisory opinion, in effect warning State agencies that although the Federal Government reimburses State and local governments for overhead costs incurred in administering Federally funded programs, there is no comparable mandate requiring the State to reimburse localities for overhead costs incurred in implementing State funded programs. The Comptroller’s bulletin enunciating the State’s statutory obligation was written in 1975. There has been no change in the legislation since that time which would require the State to pay for indirect costs such as CAP. Indeed, the legislative trend has been the exact opposite, as evidenced by the 1979 amendment to subdivision 1 of section 601 of the Public Health Law, which has excluded reimbursement of even fringe benefits. Thus, the action of the State Comptroller in issuing the advisory opinion is in no manner ultra vires, and respondent’s reliance on the bulletin as a pronouncement of the State’s statutory obligation, is entirely proper.
It is well established that the interpretation given a statute by the agency responsible for its enforcement is entitled to great weight, as long as that interpretation is not irrational or unreasonable. (Matter of Fine way Supermarkets v State Liq. Auth., 48 NY2d 464.) There is nothing irrational or unreasonable about respondent’s interpretation of ECL 3-0117 and the related provisions. Accordingly, the State’s determination that the ECL and the Public Health Law cannot reasonably be interpreted to authorize CAP reimbursement from funds specifically designated by the Legislature for use in environmental conservation activities should not be disturbed.*
v. CONCLUSION
Statutes disbursing State funds must be strictly construed. There indeed may be merit and logic for the city to claim reimbursement for indirect assistance to State-funded projects but such claim must be specifically authorized by the State Legislature.
*743 The determination of the Commissioner of State DEC denying reimbursement to the city for CAP costs allocated to the city’s Bureau of Air Resources is not affected by an error of law. Those costs are not incurred by City DEP or by any agency which undertakes environmental conservation activities. Neither the Environmental Conservation Law, nor the Public Health Law requires the State to pay for general overhead costs of the city’s central support agencies. Accordingly, this article 78 petition is dismissed.

 This court requested both parties to ascertain whether New York State has agreed with any New York City agency to reimburse all, or a portion of that agency’s CAP costs. Both parties responded that the State has no such agreement with any city agency.